Filed 8/5/25; opinion on transfer

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SCOTT ROBERT FLEMING,<br><br>    Defendant and Appellant. | 2d Crim. No. B315836<br>(Super. Ct. No. 19CR06812)<br>(Santa Barbara County)<br><br>OPINION ON TRANSFER<br>FROM SUPREME COURT |

Eric Romero, the victim, suffered a fatal brain injury after Scott Robert Fleming (appellant) "sucker punched" him in the face.[1] The blow caused Romero to fall backward, striking the back of his head against a hard surface.

Appellant, who was on probation, was arrested and charged with voluntary manslaughter. He appeals from the judgment entered after a jury convicted him of voluntary manslaughter

---

[1] "A 'sucker punch' is 'a punch made without warning or while the recipient is distracted, allowing no time for preparation or defense on the part of the recipient.'" (*People v. Palomar* (2020) 44 Cal.App.5th 969, 977.)

based on conscious disregard for human life.  (Pen. Code, § 192, subd. (a).)[2]

Appellant admitted one prior serious felony conviction (§ 667, subd. (a)(1)) and one prior strike within the meaning of California's "Three Strikes" law.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  The trial court denied appellant's motion to dismiss the strike.  In October 2021, when he was 32 years old, appellant was sentenced to prison for 27 years: the upper term of 11 years, doubled to 22 years because of the prior strike, plus five years for the prior serious felony conviction.[3]

In an unpublished opinion filed on April 18, 2023, we affirmed the judgment.  Our Supreme Court granted review and transferred the matter back to us "with directions to vacate [our] decision and reconsider the cause in light of *People v. Reyes* (2023) 14 Cal.5th 981 [(*Reyes*)], *People v. Salazar* (2023) 15 Cal.5th 416 [(*Salazar*)], and *People v. Lynch* (2024) 16 Cal.5th 730 [(*Lynch*)]."  In this opinion we have followed the Supreme Court's directions.

In his opening brief appellant claimed that, during closing argument, the prosecutor had erroneously informed the jury that "where a defendant is charged with voluntary manslaughter [based on conscious disregard for human life] . . . , the People must prove that the [defendant's] act had an objectively high probability of death."  In our original decision we rejected appellant's argument.

---

[2] All statutory references are to the Penal Code.

[3] "Voluntary manslaughter is punishable by imprisonment in the state prison for 3, 6, or 11 years."  (§ 193, subd. (a).)

After our original decision had become final, *Reyes*, *supra*, 14 Cal.5th at p. 989, held that "[t]o suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must "'involve[] a high degree of probability that it will result in death."'" In his post-*Reyes* supplemental brief, appellant contends he "was convicted based on 'conscious disregard for human life,' that is, an implied malice theory."

Relying on *Reyes*, appellant argues that his conviction must be reversed on three grounds: (1) the evidence "is insufficient to support a finding that punching the victim carried a high degree of probability that it would result in . . . death," (2) the jury instructions failed to inform the jury that it must make this finding, and (3) the prosecutor's closing argument "caused jurors to misapply the law." (Bold omitted.)

The Attorney General does not dispute that appellant was convicted on an implied malice theory. But he argues that "the prosecutor properly discussed the principles of implied malice, as later set forth in *Reyes*." He contends the implied malice requirement was met because "overwhelming evidence supports the jury's conclusion that the probability of death from appellant's knockout punch . . . was, in fact, highly probable."

Both appellant and the Attorney General erroneously assume that the elements of implied malice murder have some relevance as to the elements of voluntary manslaughter based on conscious disregard for life. The concept of malice has nothing to do with voluntary manslaughter.[4] *Reyes's* holding requiring a "high degree of probability" of death applies only to implied

---

[4] "Manslaughter is the unlawful killing of a human being without malice." (§ 192.)

malice murder.  (*Reyes*, *supra*, 14 Cal.5th at p. 989.)  "[C]ases are not authority for propositions not considered."  (*People v. Casper* (2004) 33 Cal.4th 38, 43.)

Appellant also claims: (1) the trial court erroneously failed to clarify the jury instruction on voluntary manslaughter, and (2) the matter must be remanded for resentencing because of recent Penal Code amendments and our Supreme Court's opinions in *Salazar* and *Lynch*.  Of these two claims, only the second has merit.

*Facts*

Appellant and Eric Romero, the victim, were friends.  They worked together at a car wash.  One night they were drinking with other friends at a pub.  After leaving the pub, appellant and another drinking companion got into a fight.  After the fight, this drinking companion walked away.

Appellant "was still fired up."  Romero "was . . . trying to calm him down."  They were standing "in front of each other" on the sidewalk.  A witness testified: Romero was "backing away" from appellant.  Appellant threw "a sucker punch . . . really quick . . . and hit [Romero] . . . right in the face."  "I don't think [Romero] saw it coming."

The witness continued: When Romero was hit, he was standing "on the edge of the curb."  He "fell straight backwards onto the street and hit his head."  The witness heard a "really loud" "smack, a slap."  "[W]hat really stands out was the crack when he hit the ground."  Romero went "totally limp."  Appellant ran away.

Romero sustained several skull fractures.  The cause of death was a "catastrophic irreversible brain injury from malignant cerebral edema," i.e., swelling of the brain.

Appellant did not testify.

*Distinction Between Murder and Manslaughter*

"Murder is defined as 'the unlawful killing of a human being, or a fetus, with malice aforethought.' [Citation.] Malice aforethought 'may be express or implied. . . .'" (*People v. Bryant* (2013) 56 Cal.4th 959, 964 (*Bryant*).) "The primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not." (*People v. Soto* (2018) 4 Cal.5th 968, 976.)

"The lesser included offense of manslaughter does not include the element of malice, which distinguishes it from the greater offense of murder." (*People v. Cook* (2006) 39 Cal.4th 566, 596.) "A defendant lacks malice and is guilty of voluntary manslaughter in 'limited, explicitly defined circumstances . . . .'" (*People v. Lasko* (2000) 23 Cal.4th 101, 108.) "A defendant commits voluntary manslaughter when a homicide that is committed either with intent to kill or with conscious disregard for life—and therefore would normally constitute murder—is nevertheless reduced or mitigated to manslaughter." (*Bryant, supra,* 56 Cal.4th at p. 968.)

*The Prosecutor Did Not Misstate*
*The Law During Closing Argument*

"Although counsel have broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law." (*People v. Bell* (1989) 49 Cal.3d 502, 538.) Appellant contends the prosecutor misstated the law during closing argument when he said the People must prove that "[t]he natural consequences of the act [appellant's punch to Romero's face] were dangerous to human life[,] [n]ot the natural and probable[,] [j]ust the natural consequences of the act were

5

dangerous to . . . human life." Appellant claims the prosecutor's argument "assured jurors that the level of risk to human life required [for voluntary manslaughter based on consciousness of guilt] is something *less* than the 'high degree of probability' that the law actually requires."

The prosecutor did not misstate the law or mislead the jury. The prosecutor's statement is in accord with the current version of CALCRIM No. 572, the instruction for voluntary manslaughter based on conscious disregard for life that was given to the jury. It provides: "[T]he People must prove that: [¶] 1. The defendant intentionally committed an act that caused the death of another person; [¶] 2. *The natural consequences* [not the natural and probable consequences] *of the act were dangerous to human life*; [¶] 3. At the time (he/she) acted, (he/she) knew the act was dangerous to human life; AND [¶] 4. (He/She) deliberately acted with conscious disregard for human life." (Italics added.)

The prosecutor's statement is also in accord with the current version of the CALJIC instruction for voluntary manslaughter based on conscious disregard for human life – No. 8.40 – which was not given to the jury: "The phrase, 'conscious disregard for life,' as used in this instruction, means that a killing results from the doing of an intentional act, *the natural consequences of which are dangerous to life*, which act was deliberately performed by a person who knows that his or her conduct endangers the life of another and who acts with conscious disregard for life." (West's California Jury Instructions, Criminal (April 2025 update), italics added.)

*Reyes* did not change the law as to voluntary manslaughter based on conscious disregard for life. The *Reyes* holding applies

6

only to implied malice murder.  To be liable for murder on this theory, "the defendant's act . . . must "'involve[] a high degree of probability that it will result in death.'"" (*Reyes*, *supra*, 14 Cal.5th at p. 989.)  *Reyes* did not hold that "a high degree of probability" of death is also a requirement for voluntary manslaughter based on conscious disregard for life.  This issue was not before the court in *Reyes*.

Here, voluntary manslaughter was the only theory of homicide charged in the information.  "[*M*]*alice is not at issue* upon a charge of manslaughter.  The charge of voluntary manslaughter *absolves* the People of proving that malice was present. . . . The possibility that the defendant killed with malice, and thus committed the greater offense of murder, does not prevent a conviction of voluntary manslaughter, a lesser included offense which does not require proof of malice." (*People v. Rios* (2000) 23 Cal.4th 450, 463.)

Because implied malice murder is the greater offense, it must have an element additional to the elements of voluntary manslaughter based on conscious disregard for human life.  (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 197 ["one offense is another's 'lesser included' counterpart if all the elements of the lesser offense are *also* elements of the greater offense"].)  An additional element is that, unlike voluntary manslaughter*,* "[t]o suffice for implied malice murder, the defendant's act . . . must "'involve[] a high degree of probability that it will result in death.'"" (*Reyes*, *supra*, 14 Cal.5th at p. 989.)

The Judicial Council of California, which adopted the CALCRIM instructions, apparently understood that *Reyes's* high-degree-of-probability-of-death requirement does not apply to voluntary manslaughter based on conscious disregard for human

7

life.  After *Reyes* was decided, in 2024 the Judicial Council amended the instruction on implied malice murder – CALCRIM No. 520 – to incorporate this requirement.  It did not similarly amend the instruction on voluntary manslaughter – CALCRIM No. 572.

Appellant asserts that "the prosecutor clearly . . . misstated the law by arguing that there was no element of probability for voluntary manslaughter."  But the prosecutor correctly noted that the element of probability applies to the issue of causation.  The prosecutor explained to the jury, "[A]n act causes the death if the death is the direct and natural and *probable consequence* of the act." (Italics added.)

The prosecutor's explanation of causation is in accord with CALCRIM No. 572, which provides: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act.  A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes." (Italics in original.)

*Appellant's Claims of Insufficiency of the Evidence and Erroneous Instruction of the Jury*

Appellant claims the evidence is insufficient because it does not support a finding that his act of punching Romero in the face "carr[ied] 'a high degree of probability that it [would] result in death.' (*Reyes, supra,* 14 Cal.5th at p. 989.)"  He also claims the trial court erroneously failed to instruct the jury sua sponte as to this requirement.  Both claims are without merit in view of our conclusion that voluntary manslaughter based on conscious disregard for life does not require that the defendant's act carry a high degree of probability that it will result in death.

8

Appellant argues that the trial court "erred by failing to clarify the jury instructions." During its deliberations, the jury requested that the court provide "[c]lassical examples of voluntary manslaughter. For example, hypotheticals taught in law school." The court denied the request. It suggested that the jury review CALCRIM No. 572 "as well as the entirety of the evidence that you have previously received in the trial." Appellant asserts: "[I]t is reasonable to conclude that the prosecutor's misstatement [of the probability requirement] contributed at least indirectly to the jury's desire for further guidance. However, the trial court passed up the opportunity to clarify the probability requirement or the source of the jury's confusion. Instead, the court redirected the jury to the ambiguous instructions already given. . . . [¶] The trial court thus erred by failing to adequately respond to the prosecutor's misstatement of the law and the jury's request for additional instruction on voluntary manslaughter."

We disagree. As we have already explained, the prosecutor did not misstate the law. Moreover, the jury did not request additional instruction on the elements of voluntary manslaughter. It requested "[c]lassical examples of voluntary manslaughter," such as "hypotheticals taught in law school." The trial court was under no obligation to provide such hypotheticals.

In addition, appellant forfeited the issue by inviting the trial court to not grant the jury's request but to instead refer the jury to CALCRIM No. 572. Appellant's counsel said, "The defense position is just going to be to refer them back to the instructions to look at [CALCRIM No.] 572." "The doctrine of

9

invited error applies to estop a party from asserting an [assumed] error when 'his own conduct *induces the commission of error*.'" (*People v. Perez* (1979) 23 Cal.3d 545, 549, fn. 3.)  Furthermore, "[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal . . . ."  (*People v. Lee* (2011) 51 Cal.4th 620, 638.)

*Resentencing Claims*

In his opening brief appellant claimed: "[T]his case must be remanded for resentencing based on the retroactive application of Senate Bill No. 567 (2021-2022 Reg. Sess.) ('SB 567') and Assembly Bill No. 518 (2021-2022 Reg. Sess.) ('AB 518'), both of which took effect after the trial court sentenced appellant."  The People concede that SB 567 and AB 518 apply retroactively to appellant.  (See *In re Estrada* (1965) 63 Cal.2d 740, 745.)  In his supplemental brief appellant contends the matter must also be remanded for resentencing pursuant to *Salazar*, *supra*, 15 Cal.5th 416, and *Lynch*, *supra*, 16 Cal.5th 730.

SB 567: the *Lynch* and *Salazar Opinions*

SB 567 became effective on January 1, 2022.  (Stats. 2021, ch. 731, § 1.3)  It amended section 1170, subdivision (b) to make the middle term the presumptive sentence.  Section 1170, subdivision (b) currently provides in relevant part, "(b)(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶]  (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the

crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

In *Lynch*, *supra*, 16 Cal.5th at p. 768, the Supreme Court stated: "We hold that under the current [version of section 1170, subdivision (b)] a Sixth Amendment [right to jury trial] violation occurs when the trial court relies on unproven aggravating facts [i.e., unproven pursuant to section 1170, subdivision (b)(2),] to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true *all of the aggravating facts* relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, . . . the defendant is entitled to a remand for resentencing." (Italics added.) Prior convictions are the only exception to this rule. (*Id.,* at p. 767 ["the Sixth Amendment jury trial right attaches to every aggravating fact, other than a prior conviction, used to justify imposition of the upper term"].)

Even if an appellate court concludes beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to impose the upper term, remand for resentencing is still required unless the record

11

"clearly indicates that [the trial court] would have found aggravating circumstances sufficiently weighty to 'justify' an upward departure from the legislative mandate for no more than a middle term sentence." (*Lynch*, *supra*, 16 Cal.5th at p. 777.)

Appellant argues that the trial court relied on unproven aggravating facts to impose the upper term of 11 years for the voluntary manslaughter conviction. He alleges, "Since there is simply no basis to conclude beyond a reasonable doubt that the jury would have found all of these factors true, under *Lynch*, the sentence needs to be vacated and the matter remanded."

The trial court did not specify the particular aggravating factors on which it relied to impose the upper term. At the sentencing hearing the court said, "There were numerous aggravating factors that have been highlighted already by [the prosecutor]." The court was referring to the oral presentation by the prosecutor at the hearing. The prosecutor cited the following "aggravating factors relating to the crime": "It was a crime that involved great violence and bodily harm. . . . The victim was particularly vulnerable. That's from the extent that the two were acquaintances, that he was sucker-punched or assaulted without being prepared for that assault, that [appellant] took advantage from a position of trust. And I would also point out that [appellant] was significantly larger, significantly taller, and weighed more than the victim in this case."

The prosecutor cited the following "aggravating factors" "relating to [appellant]": "[Appellant] is a serious danger to the community. . . . [He] has shown continued escalation in his behavior over time starting with throwing rocks off the freeway

overpass,[5] assaulting [an apartment] manager[,] . . . assaulting a girlfriend's ex-boyfriend, and ultimately in this case assaulting and killing Mr. Romero. . . . His previous performance on probation, parole, has been unsatisfactory. He's been on parole, probation, numerous times, . . . and, in fact, he was actually on probation at the time that he committed this offense."[6]

---

[5] As a result of this incident, in 2008 appellant was convicted of felony assault with a deadly weapon (§ 245, subd. (a)(1)). This is both the prior strike and the serious felony conviction. The probation report described the offense as follows: "[Appellant] was on a bicycle path . . . in Carpinteria and threw a large rock at a vehicle traveling on the U.S. Route 101 highway. The rock shattered the vehicle's driver's side window, causing broken glass to enter the vehicle and cut a female victim's face and back."

[6] The above aggravating factors are similar to those listed in the probation report. The trial court said it was "in agreement with" "the sentencing factors that probation lays out." They are: "1. The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness [citation]. [¶] The victim . . . was trying to de-escalate the situation and calm the defendant down when the defendant attacked him with a 'sucker punch' that knocked him unconscious, and caused him to fall and suffer fatal injuries. The strike was vicious and, since the victim was not participating in the fighting and playing the role of peacemaker, especially callous and cold-hearted. [¶] 2. The defendant has engaged in violent conduct that indicates a serious danger to society [citation]. [¶] 3. The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness [citation]. [¶] 4. The defendant has served a prior term in prison or county jail under §1170(h) PC [citation]. [¶] 5.

13

The prosecutor continued: "Some other factors I feel the Court should consider is the fact [appellant] fled the scene of the incident after he killed Mr. Romero . . . . It's also telling that he yelled out, 'Who hit him?' in an attempt to get somebody else in trouble for what he had done . . . . [¶] Something else the Court should consider is [appellant] actually made up different stories and told people different events of what had occurred. . . . These statements were inherently untrue . . . . Once again, that's another factor the Court can consider in terms of [appellant] not taking any responsibility for his actions or admitting guilt at an early stage in the proceedings."

After the prosecutor had completed his oral presentation, the court said, "[I]t does seem to this Court that throughout your . . . adult life, you are often blaming others for your actions." The trial court cited "the rock throwing incident," which occurred in 2007, as an example of how appellant has refused to accept responsibility for his actions.

The court continued: when Romero's brother, Christian, "was speaking to the Court and . . . was suggesting that [appellant] had murdered [Romero], [] [appellant] loudly declared [']not true['] while sitting here in court. So it just seems to this Court that it is very, very difficult for you to ever acknowledge any blame for your actions over the years. And that difficulty is really troubling to the Court." The reporter's transcript of the sentencing hearing shows that Christian stated, "He's a murderer and will always be a murderer."

---

The defendant was on probation when the crime was committed [citation]. [¶] 6. The defendant's prior performance on probation and parole was unsatisfactory [citation]."

14

The court observed that "there were no mitigating factors" and that appellant had a lengthy criminal record: "[The] probation Presentence Report highlighted some five full pages of criminal history for [appellant] dating all the way back to 2004 as a juvenile.  And . . . of those 16 criminal matters that were commented upon, eight . . . involved violence by [appellant] upon another . . . ."

The trial court did not find that appellant had failed to show any remorse for the killing.  The court said: "[T]he Presentence Report indicated that [appellant] . . . described Mr. Romero, quote, as one of my best friends, closed quote . . . .  And that you then cried and added, quote, I failed to protect him, unquote."

The People claim: "Under *Lynch*, it is clear beyond a reasonable doubt that any reasonable jury would have found all of the aggravating factors true by that same standard had the issue been presented to it."  "In addition, *the record clearly indicates* that the trial court would not have imposed a lesser sentence" under amended section 1170, subdivision (b).  (Italics added.)

We need not decide whether a jury would have found all of the aggravating factors true.  The following excerpt from *Lynch*, *supra*, 16 Cal.5th at p. 777, shows that the matter must be remanded for resentencing because the record does not "clearly indicate" that, under amended section 1170, subdivision (b), the trial court would have exercised its discretion to impose the upper term:  "Here, the trial court found eight circumstances in aggravation and none in mitigation.  It emphasized, among other things, that Lynch had committed repeated acts of violence; his use of multiple weapons in this case involved great violence,

15

cruelty, viciousness, and callousness; and his criminal record demonstrated a serious danger to society. He was on parole when he committed the current crimes. Based on these findings, the court concluded that an upper term sentence was 'appropriate.' This record . . . does not necessarily speak to how the court would have exercised its discretion under the weight of the presumptive middle term maximum sentence that currently exists. [Citation.] Notably, the court did not make the kind of *definitive statements that we have found to clearly indicate it would not impose a lesser sentence under any circumstances.* (See, e.g., *People v. Flores* (2020) 9 Cal.5th 371, 432 . . . [in finding the defendant "'deserving [of] the ultimate sentence of death,'" trial court observed that the defendant was "'the worst of the worst,'" that he "'show[ed] absolutely no remorse'" and that "'[i]t's as if he has no soul'"]; [citation].) Rather, this record comes within our general admonishment in *Salazar* that '[m]ere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements [the trial court denied appellant's motion to dismiss the strike], is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers.' [Citation.] In other words, it would be 'speculative' [citation] to conclude the trial court's finding that an upper term sentence was 'appropriate' in the exercise of its broad discretion, clearly indicates that it would have found aggravating circumstances sufficiently weighty to 'justify' an upward departure from the legislative mandate for no more than a middle term sentence." (Italics added; see also *Salazar*, *supra*, 15 Cal.5th at p. 431

16

["When the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing"].)

The trial court here was concerned that appellant had failed to take responsibility for his criminal conduct. But it "did not make the kind of definitive statements that [our Supreme Court has] found to clearly indicate it would not impose a lesser sentence under any circumstances." (*Lynch*, *supra*, 16 Cal.5th at p. 777.)

<u>AB 518</u>

The information consisted of three counts based on the same act – appellant's punch to Romero's face. Count 1 was the voluntary manslaughter charge. Count 2 charged assault by means of force likely to produce great bodily injury. (§ 245, subd. (a)(4).) Count 3 charged battery causing serious bodily injury. (§ 243, subd. (d).) Appellant was convicted of all three offenses. Pursuant to former section 654, the trial court imposed upper-term sentences on counts 2 and 3 but stayed execution of the sentences.

Section 654 "prohibits multiple punishment for any single act or omission. If a single action or course of conduct by a defendant violates multiple laws, 'the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense. . . .' [Citation.] Until recently, the law required trial courts to impose sentence 'under the provision that provides for the longest potential term of imprisonment.' (Former § 654, subd. (a).) In 2021, however, the Legislature enacted Assembly

17

Bill No. 518 . . . , which removes the requirement to impose the longest prison term.  As the preamble to the bill explains, it allows 'an act or omission that is punishable in different ways by different laws to be punished under either of those provisions.'" (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.)

Appellant was sentenced before the amendment of section 654.  He maintains that, "[b]ecause Count 1 [voluntary manslaughter] carried a longer sentence than Counts 2-3, the trial court . . . imposed the sentence for Count 1 . . . and stayed the sentence for Counts 2-3 . . . ."  Appellant argues, "[T]his case should be remanded so that the trial court can exercise its newly granted discretion to impose a lesser sentence among Counts 1-3."

In view of our decision to remand the matter for resentencing pursuant to section 1170, subdivision (b), we need not decide the section 654 issue.  Appellant is entitled to a full resentencing, which will allow the trial court to exercise its discretion under amended section 654.  "The full resentencing rule . . . dictates that 'when part of a sentence is stricken on review, on remand for resentencing "a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances."' [Citations.] . . . A full resentencing may involve the trial court's revisiting such decisions as the selection of a principal term, whether to stay a sentence, whether to impose an upper, middle, or lower term, and whether to impose concurrent or consecutive sentences." (*People v. Jones* (2022) 79 Cal.App.5th 37, 45-46; see the discussion of the "full resentencing rule" in *People v. Buycks* (2018) 5 Cal.5th 857, 893-895.)

*Proceedings on Remand*

18

"Further proceedings on remand are to be conducted in accordance with the current statutory requirements and [appellant] given the opportunity for [a] jury trial" as to any aggravating facts for which a jury trial is required pursuant to section 1170, subdivision (b). (*Lynch*, *supra*, 16 Cal.5th at pp. 777.) The trial court "may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury to support a verdict on underlying counts and enhancements. The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence. (§ 1170(b)(2).) If it cannot so conclude, it may impose no more than a middle term for each of the counts on which [appellant] stands convicted. (*Id*., subd. (b)(1).)" (*Id*. at pp. 777–778.) Appellant's resentencing shall comply with the new requirements for imposing an upper term punishment based on the increasing seriousness of a defendant's prior convictions or his unsatisfactory performance on probation. (*People v. Wiley* (2025) 17 Cal.5th 1069, 1082-1084.)

### *Disposition*

Our prior decision filed on April 18, 2023, is vacated. The sentence is reversed, and the matter is remanded for a full resentencing consistent with the views expressed in this opinion. In all other respects, the judgment is affirmed.

19

CERTIFIED FOR PUBLICATION

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Thomas R. Adams, Judge

Superior Court County of Santa Barbara

_____

Mark R. Feeser, Jennifer Peabody, and David Andreasen under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, David A. Wildman, Deputy Attorney General, for Plaintiff and Respondent.